IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

SHANNON ING,

        Plaintiff,

vs.

CARNIVAL CORPORATION d/b/a

CARNIVAL CRUISE LINE,

        Defendant,

_____/

**AMENDED COMPLAINT FOR DAMAGES**

**AND DEMAND FOR JURY TRIAL**

The Plaintiff, SHANNON ING, (hereinafter "Plaintiff"), through undersigned counsel, files this Amended Complaint against Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE, for damages and alleges:

**GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS**

1. Plaintiff, SHANNON ING, is a citizen and resident of the State of South Carolina.

2. Defendant, CARNVIAL CORPORATION (Herein referred to as "CARNIVAL'), is a Panamanian corporation with its principal place of business in Miami, Dade County, Florida. At all times material hereto Defendant CARNIVAL CORPORATION does business under the

1

fictitious name CARNIVAL CRUISE LINE. For federal jurisdictional purposes, CARNIVAL is both a citizen of Panama and a citizen of Florida.

3.  Subject matter jurisdiction exists based on diversity of citizenship pursuant to 28 U.S.C. §1332(a)(2). As alleged above there is complete diversity in citizenship of the parties because Plaintiff, SHANNON ING is and out all material times has been a citizen and resident of the state of South Carolina, while Defendant CARNIVAL is a citizen both of Panama and of Florida for jurisdictional purposes. The amount of damages claimed exceeds the minimum jurisdictional amount required for diversity of citizenship cases.

4.  Defendants, at all times material hereto, personally or through an agent:

   a.  Operated, conducted, engaged in, or carried on a business venture in this state and/or county or had an office or agency in this state and/or county.
   b.  Was engaged in substantial activity within this state.
   c.  Operated vessels in the waters of this state.
   d.  Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181, or 48.193.
   e.  The acts of the Defendant set out in this Complaint occurred in whole or in part in this county and/or state.
   f.  The cruise line ticket for the Plaintiff requires that suit be brought in this Court against CARNIVAL in this action.

5.  The Defendant is subject to the jurisdiction of the Courts of this state.

6.  CARNIVAL, as a common carrier, was engaged in the business of providing to the public and to the Plaintiff in particular, for compensation, vacation cruises aboard the vessel, CARNIVAL SUNSHINE.

7.  On or about June 20, 2022, Plaintiff was a fare paying passenger onboard the passenger cruise ship CARNIVAL SUNSHINE, which was owned and/or operated by Defendant CARNIVAL.

8.      Defendant, CARNIVAL is a Panamanian corporation and maintains a place of business in Miami-Dade County, Florida. At all times material Defendant, CARNIVAL CORPORATION does business under the fictitious name of CARNIVAL CRUISE LINE. CARNIVAL conducts substantial business within the State of Florida and is subject to the personal jurisdiction of this Court.

9.      Venue is proper under 28 U.S.C. §1391 (b)(1) as the Defendant CARNIVAL resides in this district and the cruise ship ticket issued by the Defendant, CARNIVAL, and its agents, require Plaintiff to file this lawsuit in this district.

10.      Plaintiff invokes the diversity jurisdiction of this Court, brings this action at law, and seeks a jury trial for all Plaintiff's claims, which she is entitled to. Alternatively, the Court has subject matter jurisdiction by virtue of its Admiralty and Maritime jurisdiction.

11.      At all times materials hereto, the Defendant has conducted ongoing, substantial, and not isolated business activity in Miami-Dade County, Florida, in the Southern District of Florida, so that in personal jurisdiction exists over the Defendant in the United States District Court for the Southern District of Florida.

12.      All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

13.      At all times material hereto, CARNIVAL owned, operated, managed, maintained, and/or controlled the cruise ship, CARNIVAL SUNSHINE.

14.      At all times material hereto, Plaintiff was a paying passenger and lawfully aboard the vessel Carnival SUNSHINE. The vessel was at all times material hereto, in navigable waters.

15.      On or about June 20, 2022, the Plaintiff was a cruise ship passenger aboard the Defendant's cruise ship name the SUNSHINE. Plaintiff was lawfully aboard the ship and was

3

owed all duties Defendant, as a cruise ship operator, owes to passengers lawfully aboard their ships.

16.     At the time of Plaintiff's incident which is the subject matter of this lawsuit, the ship was docked at the Port in Charleston, South Carolina, and the vessel was in navigable waters. Since Plaintiff's claims arise out of an incident that happened onboard a cruise ship in navigable waters, the general maritime law of the United States is applicable.

17.     At or about 8:15 A.M, Plaintiff was on Lido deck of the CARNIVAL SUNSHINE, by the Lido marketplace area and the Blue Iguana Cantina. She had left the Blue Iguana Cantina and began walking down a narrow walkway for the passengers leading to two glass sliding doors that passengers frequently used to come and go from the Lido marketplace area, and the passageway was also designated as an emergency exit route in cases of emergencies. See the following photograph:



18.     The area where the Blue Iguana Cantina and this narrow passageway is located on the Lido Deck, deck nine of the CARNIVAL SUNSHINE. The deck surface is an API manufactured deck, which is substantially similar to the Bolidt deck surfaces used by CARNIVAL on their cruise ships. As such Defendant is well aware of the type of surface and its propensity to become unreasonably slippery when wet, as well as the need to properly maintain the surface in order to retain any slip resistance qualities the surface had upon installation. Here, the deck surface in the area of the fall was installed in 2013 and has not been changes since according to Defendant.

19.     The API deck surface and Bolidt deck surfaces have been commonly used by Defendant for many years on the Lido decks of its vessels; therefore, Defendant is, and has been for many years, well aware that this is a surface that has the look of being wood, but it is plastic which is then covered by a material that gives the appearance of wood.

20.     Defendant is, and has been, aware for many years, this type of surface, Bolidt or API, gets unreasonably and dangerously slippery when wet or when other liquids beside water spill on it. As such, Defendant is aware of the need to properly test the surface to make sure it has adequate slip resistance, and to follow manufacturer's recommendations as to maintenance and cleaning of the surface so it maintains an adequate slip resistance.

21.     Over time, including for years leading up to the Plaintiff's incident, Defendant was aware that most accidents on the ships are slip and fall incidents.

22.     Over time, including for years leading up to the Plaintiff's incident, Defendant was aware that most passenger slip/fall incidents happen on the Lido decks of its ships.

23.     Over time, including for years leading up to the Plaintiff's incident, Defendant was aware that the areas where the API and Bolidt surfaces were installed, especially on the Lido decks,

where Plaintiff's slip and fall incident occurred, was where many, if not the majority, of the slip and fall incidents occurred.

24.     Prior to Plaintiff's fall, in the Safety Meetings held by Defendant, the Lido marketplace area, the surrounding vicinity, and the lido deck, was noted by Defendant to be the area where many or most slip/fall incidents happened.

25.     Prior to Plaintiff's fall, Defendant noted in Safety Meetings Minutes there was a need for more caution wet floor/warning signs to cover the Lido deck area where most of the slip/fall incidents occur.

26.     Prior to Plaintiff's fall, the Defendant noted in its Safety Meetings Minutes that the root cause of many of the slip/fall incidents was Defendant's failure to check/monitor the area where most slip/fall incidents are known by Defendant to happen and failure to identify the hazard or risk.

27.     Defendant knew, prior to Plaintiff' s fall, that many, if not most, injuries happen on the same type of deck surface Plaintiff slipped and fell on, and that this surface becomes unreasonably slippery when wet, thus posing a hazardous and dangerous condition for passenger's safety.

28.     Defendant also knew, as shown in Safety Meeting Minutes prior to the incident, that when the ship is in port, humidity can also increase the slipperiness of the deck surface on deck nine, which is where Plaintiff fell.

29.     Prior to the Plaintiff's incident, Defendant also knew people walk around the Lido deck in wet clothes.

30.     Defendant, prior to Plaintiff's incident, also knew that passengers carried drinks when walking on the Lido deck including in the area where Plaintiff's incident occurred. There

were food locations, bars, and even a beverage dispenser and ice cream/yogurt machine located on the Lido deck where Plaintiff was walking at the time of the incident.

31.   At all times material hereto, the security team, as the team that investigates accidents and attends Safety Meetings, was in charge of identifying trends of accidents to the passengers so as to prevent them from happening.

32.   Defendant also knew, prior to Plaintiff's incident, how unreasonably slippery and dangerous the Lido deck surface could get as evidenced by the fact in Safety Meetings Minutes it was noted by Defendant that something called "wash and walk" needed to be applied continuously to eliminate any slippery effects on the Lido deck that leads to accidents.

33.   Prior to the Plaintiff's slip and fall incident, a trend Defendant became aware of was that accidents were happening not only due to failure to check/monitor the area, but due to Defendant's failure to identify hazards and risks.

34.   Defendant was also aware that the deck surface on the Lido deck becomes unreasonably slippery and puts passengers at risk for slip/fall incidents, as evidenced by Safety Meetings Minutes documenting that wet floor signs should be placed whenever the deck becomes wet, and recognizing more wet/caution signs needed to be placed on the Lido deck, which is where Plaintiff slipped and fell.

35.   Defendant, prior to Plaintiff's incident, was aware of the dangers of Bolidt deck surfaces and API surfaces for use on its decks due to prior substantially similar incidents, meaning prior slip/fall incidents on this type of deck surface reflecting the slippery nature of this surface when it gets wet.

36.   Had Defendant conducted proper slip resistance testing of the deck surface used on the Lido deck on the CARNIVAL SUNSHINE, and on Defendant's other cruise ships, Defendant

7

would have learned the surface when wet violates safety standards, including Defendant's internal standards, pertaining to the co-efficient of friction or slip resistance numbers required as a minimum to provide a reasonably safe walking surface.

37.     The proper testing of the API and Bolidt deck surfaces, when wet, show the slip resistance is below industry standards, Carnival's internal standards, and safety standards recommended by leading safety organizations.

38.     Despite Defendant actually knowing, prior to Plaintiff's slip/fall on the Lido deck, this was the area where most slip/fall incidents occur, and despite knowing the deck surface was unreasonably slippery when wet and dangerous for its passengers, Defendant not only failed to utilize a different deck surface, Defendant failed to properly maintain the unsafe deck surface allowing it to be in disrepair, and with very little slip resistance when wet. The deck surface where Plaintiff fell was installed in 2013 and there were no changes made prior to Plaintiff's incident.

39.     On or about June 20, at approximately 8:15 A.M, Plaintiff slipped and fell when walking on the Lido deck nine, near the Blue Iguana Cantina by the port side glass sliding door leading to the Lido Deck Marketplace. The floor was unreasonably slippery and dangerous. Plaintiff was seriously injured.

40.     The area where Plaintiff fell was an area very close to the Blue Iguana Cantina, and there were many Carnival crew members working in that area. At the time of Plaintiff's fall, it was the time Defendant had to prepare for the disembarkation of the passengers and embarkation of new passengers, so crew members were in the vicinity where Plaintiff fell including crewmembers working at the Blue Iguana Cantina which was where Plaintiff slipped and fell.

41.     After Plaintiff fell, she screamed for help and was laying on the floor waiting for assistance. While on the floor she noticed the floor was wet. Before her fall she did not notice any

water because the passageway she slipped on leading from the Blue Iguana Cantina to the double glass doors was heavily shaded and the floor was so poorly maintained it had dirt marks and other damage to it, not only showing the poor maintenance of the deck but making it difficult to see any water on the deck.

42.     A number of Carnival crew members eventually showed up to the scene of the incident, as evidenced by the following photograph:



43.     As shown in the photo, Plaintiff was laying on the ground and required a stretcher to be moved. The CARNIVAL crew moved her and manipulated her onto a stretcher. Plaintiff was in agonizing pain as she had suffered a dislocated knee, a very serious injury and painful injury.

9

The photo depicts the narrow walkway Plaintiff was walking through when she fell, and the view is from the food station of the Blue Iguana Cantina leading to the double glass doors.

44.     Plaintiff requested Defendant to call an ambulance so she could be taken to a local hospital. However, Defendant delayed such, causing a delay in Plaintiff getting appropriate treatment.

45.     In the area where Plaintiff fell, which is the narrow walkway leaving the Blue Iguana Cantina food service station and leading to two glass sliding doors into the Lido marketplace, there is also a beverage station for passengers to get water, ice and other drinks, and there is an ice cream station located there too. The cups for passengers to get beverages comes with no tops and Defendant is aware of the fact this area is an area identified by Defendant to be where many or most of the slip/fall incidents happen, which is the Lido deck area where the pool and food and beverage areas are located. Despite such, Defendant has continuously retained the unsafe deck surface for the area that is unreasonably slippery and dangerous to the passengers when wet.

46.     Since the incident occurred while the vessel was at the Port in Charleston, South Carolina, the incident was investigated by the United States Coast Guard. The information given to the Coast Guard was intentionally misleading in order to place blame on the Plaintiff for the slip/fall she suffered. Defendant submitted statements and photos to show there was a caution/wet floor sign present. There was in fact no warning signs placed in the vicinity of the slip/fall, as claimed by Defendant, although there should have been and it was negligent not to have the signs, as was acknowledged by Defendant telling the Coast Guard the sign or signs were there at the time of the fall. This is an admission by Defendant it knew there should have been signs present warning of the danger.

10

47.     Defendant has continued this misinformation and untruth by filing sworn answers to interrogatories dated September 4, 2024, again stating warnings signs were present at the area despite this not being true. This has caused emotional distress to the Plaintiff and is outrageous conduct that is not acceptable in our society and under the law should result in the finding of intentional infliction of emotion distress to the Plaintiff justifying compensatory damages, and the outrageous conduct should justify an award of punitive damages.

48.     The intentional act of supplying misleading information to the Coast Guard, and Defendant stating there were warning signs in the immediate vicinity of Plaintiff's fall, was with the intention of casting blame on the Plaintiff for failure to heed the warning sign that the floor was in fact wet. This has caused additional mental anguish to the Plaintiff for being wrongfully blamed for this incident and Defendant providing false information to the United States Coast guard.

49.     At the time of Plaintiff's fall in the narrow short walkway leading from the Blue Iguana Cantina food station, there was a leak coming from the wall causing water to leak on to the deck due to caulking in the area that was inadequate to contain a leak of water. The area where the walkway is houses the cooking area for the Blue Iguana Cantina, which is located right behind the wall that runs the length of this short walkway where Plaintiff fell. In this location food is being cooked and dishes washed, which likely led to water leaking requiring caulking down this entire walkway and wall, which was visible upon inspection. The leak was repaired in the immediate aftermath of Plaintiff's fall.

50.     Defendant contending a wet/caution sign was placed in the immediate vicinity of Plaintiff's fall is a clear admission Defendant knew the area was wet and required a caution sign,

11

and required remedial action; yet, when Plaintiff fell on the wet deck , there was no warning sign and the leak had not been fixed.

51.    The floor was so slick it caused Plaintiff's foot to suddenly slide violently as if she hit a patch of ice. The floor was dangerously slippery and there was no warning to the Plaintiff prior to her fall about the hazard.

52.    Defendant was also aware the deck surface where Plaintiff fell was unsafe, and unreasonably slippery, as evidenced by the fact Defendant placed anti-skid strips on the top of the deck surface in a small area in the walkway where Plaintiff fell which was placed solely for the spot where crew walked in and out of a door that was in the walkway by the beverage dispenser. No such strips were placed on the walkway for the passengers who had to traverse the exact same surface the crew had to in the same area. The strips were placed only for the crew coming and going from the door that led to a restricted crew area, showing Defendant's total disregard for the safety of its passengers. See photo below:



53.     Following the crew getting Plaintiff on the stretcher, she was taken to the ship's infirmary, where she remained until a call was finally made to have an ambulance to transport Plaintiff to a local hospital. Charleston has a well-known medical facility where Plaintiff was taken, where she wanted her serious injury treated instead of onboard the cruise ship, where she had no idea as to the qualifications of the doctors. It is also known that cruise ships do not have orthopedic specialists licensed in the United States to treat passengers.

54.     Due to Defendant's delay in having Plaintiff transported to the local hospital, Plaintiff suffered additional pain, suffering, mental anguish, and disability and injuries.

55.     Plaintiff has undergone multiple procedures to treat her knee injuries, extensive and painful rehabilitation and has been left with a permanent disability and impairment of functioning.

56.     Plaintiff will require future medical care and treatment and modifications to her home due to her impairment in mobility and functioning. Her quality of life and ability to enjoy life has been significantly impacted.

57.     At all times material hereto the crew, including the medical staff, were employees and/or agents of Defendant acting within the course and scope of their employment, and Defendant is vicariously liable for any negligence of the employees and/or agents.

58.     The intentional acts of Defendant, in failure to properly maintain the walkway, which is known to be frequently used by passengers, and despite it being a designated as an emergency exit route, and despite it being in the area where Defendant knew the most slip fall incidents happen to its passengers, was a total disregard for the safety of the passengers and justifies an award of punitive damages against Defendant.

59.     Defendant's continued use of the deck surface in the walkway, allowing it to be in disrepair, failure to remedy leaks, failure to warn, and placing anti-skid strips only for crew

members, was intentional, willful and wanton disregard of their obligations for the safety to the passengers, which is measured by the circumstances.

60. Where Plaintiff fell was near Blue Iguana Cantina on deck nine, referred to as the Lido deck, in a narrow, short passage or walkway to double glass door where the Lido marketplace is. This area is known to be an area and with a deck surface where most of the slip fall incidents on Defendant's ships happen. Slip/fall incidents are the number one source of injuries to its passengers.

61. The deck surface chosen by Defendant for the Lido deck is an API installed deck surface, which is substantially similar to the Bolidt deck surface also used by Defendant, and the two can be confused because they are so similar. Both surfaces are unsafe for the Lido decks where most slip/fall incidents happen due to the presence of pools, bars, food places, drink stations, ice cream stations, and it is the most frequently traversed deck on the ships. The surfaces, be it Bolidt or API, are dangerously slippery when wet, and do not have a safe slip resistance for a walkway. This is especially so due to Defendant's failure to follow manufacturer's instructions and recommendations for proper maintenance, and failure of Defendant to make sure the surfaces have adequate slip resistance for the passengers.

62. After the Plaintiff fell, because the ship was at the port in Charleston South Carolina, the United States Coast Guard investigated the incident and in connection with the investigation Defendant supplied information including photographs. The Defendant falsely stated there was a caution/wet floor sign and provided a photograph to the Coast Guard reflecting such. See the following photograph, which depicts the view from the Blue Iguana Cantina food station down the walkway where Plaintiff fell, leading to the double glass doors of the Lido Marketplace.

14



63.    Additional photographs provided by Defendant taken as part of their investigation, reflects caution/wet floor signs on both ends of the walkway. See the following photograph produced by Defendant as one of the photographs taken at the time of investigation. However, there were no warning signs at the time of Plaintiff slip and fall:



15

64. Following the incident there was a significant delay in making arrangements for the Plaintiff to be transported to a local hospital for treatment despite the seriousness of her injury and immediate need for treatment. This was enabling Defendant to conduct its investigation including taking misleading photographs that were supplied to the Coast Guard in order to place blame for the incident on the Plaintiff. This is outrageous conduct.

65. The delay by Defendant in arranging for the disembarkation by ambulance to a local hospital also resulted in addition damages to the Plaintiff, including increased pain and suffering, mental anguish, and disability.

66. The floor surface where Plaintiff fell was unreasonably slippery and unsafe. It lacked a safe slip resistance, and the slip resistance testing of the deck revealed it was significantly below the known safety standards for slip resistance, and below CARNIVAL's own internal standards it implemented for determining the appropriate slip resistance of its deck surfaces.

67. The condition of the area where Plaintiff fell, including the fact there was a leak of water onto the deck, and the condition of the deck surface, including the lack of slip resistance, demonstrate this area was not regularly inspected, monitored and maintained as it was required to be, which resulted in a dangerous/hazardous condition for passengers such as plaintiff. The walkway was not slip resistant when wet and unsafe to walk on.

68. Upon information and belief, there had been prior incidents onboard the SUNSHINE and other Carnival Vessels with a similar deck surface involving slip and falls due to wet and slippery conditions, providing notice to CARNIVAL that:

    I.    The type of deck surface used on the Lido Deck, and where Plaintiff fell, was an unsafe floor surface as it was not adequately slip resistant for the area.

16

II.     The Lido deck and the Blue Iguana Cantina area was an area that was highly trafficked by passengers and a food and beverage area, where the spillage of food, beverages, and other items were likely, which would create an unreasonably slippery walking surface for the passengers.

69.     At all times material hereto, Defendant had a duty to exercise reasonable care under the circumstances for the safety of passengers including the Plaintiff, including a duty to prevent, remedy and warn about unsafe and dangerous conditions a passengers could encounter.

70.     Defendant was also actively involved in the deign and choice of deck surface for the Lido deck where Plaintiff fell, and had a duty to select or approve a deck surface that would not be unreasonably slippery and dangerous to its passengers, Defendant had a duty to properly maintain the deck surface, and to remove it and replace it or resurface it so as not to allow an unreasonable slippery and dangerous deck to exist on the ship, especially in high traffic area known to be the most likely place for slip/fall incidents to happen.

## COUNT I
## NEGLIENCE AGAINST DEFENDANT CARNIVAL

71.     The Plaintiff, realleges and adopts paragraphs one (1) through seventy (70) above and further alleges:

72.     Claims arising from torts committed aboard ships on navigable waters are governed by General Maritime Law.

73.     Under the Maritime Law, CARNIVAL owes a duty of reasonable care under the circumstances to the passengers regarding their safety.

74.     The Duty to exercise reasonable includes the duty to duty to remedy, prevent, and/or warn about unsafe and dangerous conditions.

17

75. At all times material hereto, CANIVAL was the owner and/or operator of the cruise ship CARNIVAL SUNSHINE and sold the passenger ticket to the Plaintiff for the cruise in question.

76. At all material times, the Defendant owed the Plaintiff, as a fare-paying passenger lawfully on board a passenger vessel it operated, a duty of reasonable care, including the duty to take reasonable steps to maintain the area where Plaintiff fell in a reasonably safe condition, and to correct dangerous conditions of which it knew or should have known with the exercise of reasonable care. Defendant also had a duty to warn passengers of any dangers or hazards Defendant knew of or should have known about.

77. Defendant was also aware that the type of deck surface used in the area where Plaintiff fell, an API deck surface, is not a safe slip resistant deck surface, especially when it gets wet and not properly maintained.

78. On the SUNSHINE, and other sister ships in the same class, there had been prior slip and fall incidents on the same type of deck surface, as well as prior slip and falls on other CARNIVAL ships using this type of deck surface or a substantially similar one. Defendant knew or should have known this was not an appropriate surface for such a high traffic area. Defendant knew this surface is made of plastic and can get unreasonably slippery and dangerous, especially when wet. Defendant was aware of the importance of proper maintenance of the deck surface, including the need to regularly add anti-skid materials to the surface, as recommended by the manufacturer of the type of deck surfaces Defendant has been installing on their ships for many years.

79. CARNIVAL was aware of the dangers to passengers of slip and fall incidents due to spillage on decks that could result in a walking surface that was not sufficiently slip resistant,

and as result developed internal standards for coefficient of friction requirements for deck surfaces known to be located in areas on the cruise ship that is subject to frequent use by passengers and where there is the likelihood of situations involving spillage of liquids or other substances on the deck. The Lido deck is known to be one of these areas, and in fact the area where most of the slip/fall incidents occur.

80.     Slip and fall incidents are the leading type of passenger cruise ship incidents involving injury to passengers, and Defendant is aware of the prevalence of slip/falls on the Lido decks of its ships. In the instant case, Plaintiff slipped and fell on the Lido deck of the ship, which is known to get wet on a regular basis, presenting slip/fall hazards to the passengers.

81.     The Defendant had in place the Own the Spill Safety Procedures and program, and crewmembers were required to be vigilant for spills and to "own the spill", as CARNIVAL was aware of the dangers of leaving a walking surface used by the passengers without making sure the floor was promptly cleaned and dry. Defendant knew it had to be vigilant in inspections and identifying hazards. Despite such, Safety Meeting Minutes reflect a trend of accidents happening due to Defendant's failure to properly inspect and identify hazards and risk.

82.     It is well known, at all times material hereto prior to the incident in question, the Lido deck is an area known to be the area where many, if not most, of the slip/fall incidents aboard the cruise ships happen.[1]

83.     Despite CARNIVAL'S knowledge of prior substantially similar slip and fall incidents, despite CARNIVAL's knowledge of the dangers of slip/fall hazards in areas such as the one involved in the incident in question, despite CARNIVAL'S knowledge of the safety

---

[1] The Lido Deck is the deck which is home to the outdoor swimming pool and adjacent bars, restaurants, and eating options. Many of the lawsuits filed in this district by passengers against cruise ship operators concern slips and trips and falls on the lido deck. *Kroll v Carnival Corp., 19-23017-civ, 2020 WL 4793444 at *2 (S.D Fla. Aug 17, 2020):*

importance of assuring deck surfaces were sufficiently slip resistant, the area where Plaintiff fell was left in an unsafe condition and dangerous condition. It was wet. The floor surface was not sufficiently slip resistant. There was no anti-skid materials used to make the area safer, the floor was left wet and not kept dry, and there were no warnings and/or inadequate warnings of unsafe conditions.

84.     At all material times the Defendant either knew or should have known of the dangerous wet condition in the area where the Plaintiff slipped and fell due to the length of time and regularity the decks on the Lido deck get work, and Defendant should have been aware of the leak that was present in the area where Plaintiff fell. Due to the length of time the, slippery area had been present before the Plaintiff encountered it, the recurring nature of the condition, or both, and Defendant owed a duty to Plaintiff to exercise reasonable care to timely and adequately remedy the dangerous conditions. Defendant knew of the slip and fall risks on the Lido decks for many years.

85.     Notwithstanding Defendant's actual or constructive knowledge of the dangerous conditions described above, the Defendant failed before the time of the Plaintiff's fall to take reasonable measures to maintain the area in a reasonably safe manner or to correct its condition, through drying or cordoning off the area or otherwise. The Defendant failed to remedy a leaking area in the walkway passengers used. The Defendant thereby failed to exercise reasonable care for the safety of its passengers including the Plaintiff and was thereby negligent.

86.     Due to the concealed nature of the dangerous conditions alleged above, the risk creating condition was not open and obvious to the Plaintiff.

87.     At all times material, the Defendant, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or

agency with the Defendant, breached the duty of reasonable care owed to the Plaintiff and were negligent in one or more of the following ways:

    a.  Failing to maintain the area in a reasonably safe condition.

    b.  Failure to remedy a leak in the area.

    c.  Failure to follow recommendations for maintaining the slip resistance of the deck surface.

    d.  Failure to properly measure the slip resistance of the deck surface used in an area known to be the leading area for slip/fall incidents.

    e.  Failure to maintain a proper and slip resistant walkway for the passengers in an area known to be a source of slip/fall accidents and injuries to the passengers.

    f.  Failure to conduct adequate inspections and properly monitor the area in question, which resulted in a wet, slippery, unsafe walkway on the day of the incident which resulted in Plaintiff being severely injured.

    g.  Failure to assign enough crewmembers to the area known to be an area of frequent spillage of liquids and other slippery substances in order to make sure the area was safe for passengers.

    h.  Providing a walkway to the passengers which violated Safety standards relating to the recommended and/or required slip resistant for walking surfaces.

    i.  Failure to block off the area where Plaintiff fell due to a leak in the walkway.

    j.  Failure to assign someone to the area where Plaintiff fell, which was next to a food station and kitchen, next to the self-serve beverage and Ice Cream station, and in the area of where the pool and other bars and eating places are located.

k. Allowing this narrow walkway, which is also a designed emergency exit, to be left in a wet, dirty, unreasonable slippery condition, making it a hazardous area for the passengers to walk through.

l. Not having enough wet/caution signs present in the area where Plaintiff fell.

m. Not placing a wet/caution sign in the area where Plaintiff fell prior to Plaintiff falling:

n. Failing to enforce and make sure the own the spill program was being followed.

o. Failing to determine the deck the surface was not slip resistance, and then rectifying such an unsafe condition.

p. Failure to have frequent inspections of the area.

q. Failure to maintain the area in a dry condition.

r. Failure to use some type of slip resistance material such as anti-skid strips in the passageway where Plaintiff fell.

s. Failing to warn Plaintiff of the unsafe conditions.

t. Failing to address prior slip and fall incidents on the Lido decks and on the substantially similar deck surface to determine how to address the safety hazard to the passengers when the deck surface had spillage of liquids or other slippery substances on it, and/or become wet.

u. Failure to determine the API deck surfaces were not safe for its intended use and replacing it.

v. Failure to properly clean and maintain the deck surface.

w. Failure to determine the coefficient of friction of the API deck surface when wet.

22

x.  Failure to follow Defendant's internal safety procedures addressing slip/fall incidents.

y.  Failure to have sufficient onboard safety inspections of the deck surface to determine its slip resistance qualities when wet.

z.  Despite CARNIVAL'S knowledge of prior substantially similar slip and fall incidents, despite CARNIVAL's knowledge of the dangers of slip/fall hazards in areas such as the one involved in the incident in question, despite CARNIVAL'S knowledge of the safety importance of assuring deck surfaces were sufficiently slip resistant, the area where Plaintiff fell was left in an unsafe condition and dangerous condition. It was wet. The floor surface was not sufficiently slip resistant. There was no anti-skid materials used to make the area safer, the floor was left wet and not kept dry, and there were no warnings and/or inadequate warnings of unsafe conditions.

aa. Failure to properly train and supervise the crewmembers.

88.   At all times material hereto, CARNIVAL knew of the foregoing dangerous conditions causing Plaintiff's incident and failed to warn or eliminate the dangerous conditions, or the conditions existed for a sufficient length of time so that CARNIVAL, in the exercise of reasonable care under the circumstances, should have learned of them and warned and/or guarded and/or eliminated them. CARNIVAL, by its own admissions is aware slip/fall incidents are the leading cause of injuries to the passengers, and the majority of the slip/fall incidents occur on the Lido deck and in the Lido marketplace area.

89.   As a direct result of the negligent acts of CARNIVAL, its agents, employees, servants, the Plaintiff slipped and fell and was severely injured.

23

90. As a direct and proximate result of the aforementioned carelessness and negligence of the Defendant CARNIVAL, the Plaintiff sustained a serious injury. Plaintiff suffered a serious injury to her body, pain and suffering, disability, mental anguish, aggravation of pre-existing conditions, inconvenience, scarring, the loss of the capacity for the enjoyment of life, loss of past earnings, loss of future earnings, diminished earning capacity in the future, her working ability has been impaired, has incurred medical expenses in the past and will incur medical expenses in the future. Plaintiff will require further medical care and treatment. These damages are permanent and continuing in nature.

**WHEREFORE**, the Plaintiff, demands judgment against the Defendant CARNIVAL for all damages recoverable under the law, as well as pre-judgment and post-judgment interest and costs to the extent allowed by law, and any other relief deemed proper under the circumstances, and demands trial by jury of all issues so triable.

### COUNT II VICARIOUS LIABILITY OF DEFENDANT CARNIVAL

91. The Plaintiff, realleges and adopts paragraphs one (1) through seventy-one (71) above and further alleges:

92. At all material times, the Defendant owed the Plaintiff, as a fare-paying passenger lawfully on board a passenger vessel it operated, a duty of reasonable care for her safety.

93. At all material times, the Defendant is vicariously liable for the failure by its crewmembers, acting in furtherance of the business of its vessel, to exercise reasonable care for the safety of Defendant's Passengers, including the Plaintiff.

94. The crewmembers working onboard the SUNSHINE had the duty to exercise reasonable care to make sure the walking surface where Plaintiff fell was safe for the passengers

to walk through, had a duty to check/monitor the area to identify hazards and risks to the passengers and to prevent, remedy and/or warn the passengers of unsafe and dangerous conditions.

95.     At the time of Plaintiff's fall the area was wet and unreasonably slippery.

96.     At the time of the incident the floor had not been properly maintained, including not having any changes since the installation of the floor in 2013, no antiskid strips or other materials to make the floor slip resistant, and a leak was present in the area causing water to get on the deck. There was no warning signs placed in the vicinity of Plaintiff's incident despite all of this.

97.     The crewmembers negligently left the area unattended, wet, and without any slip resistance safety measures in the area where Plaintiff fell, despite it being a major walkway designated as a fire exit, despite it being in the food area, despite it being on the Lido deck, despite a leak in the area, and despite knowing antiskid strips on the same walkway had been placed solely for crew, which indicated the deck surface was not sufficient slip resistant for passengers to walk on. In addition, the walkway was located right next to a food station and beverage dispenser for the passengers to use, and the area was known to get wet or have other type of liquids or food spill there.

98.     Defendant, CARNIVAL, is liable on the basis of vicarious liability for the following acts of negligence of its crewmembers:

    a.  Failure to adequately keep the area dry.

    b.  Failure to adequately warn the passengers.

    c.  Failure to properly place appropriate warning signage.

    d.  Failure to inspect the area and notice it was unsafe and rectify the unsafe condition.

e.  Failure to maintain the area in a safe condition.

f.  Failure to follow the procedures of the company.

g.  Failure to monitor the area and identify the hazards, dangers and remedy them.

h.  Allowing a leak to be present in the area and not blocking off the area or fixing such.

i.  Failure to place a wet/caution sign and then falsely claiming such was present in order to blame Plaintiff showing that the crewmembers knew the area was wet and required such a sign. However, no such sign was present.

j.  The crew failed to timely call for an ambulance so that Plaintiff could promptly and properly be treated for her very serious injury, a dislocated knee, which required qualified experts to handle, transport and treat the Plaintiff.

k.  Failure to follow instructions in rules of the Defendant.

99.   Due to the concealed nature of the dangerous conditions alleged above, the risk creating condition was not open and obvious to the Plaintiff. The small, narrow walkway where Plaintiff fell is on an open deck and partially covered, created a shaded area. In addition, the floor there was poorly maintained and there was marks, dirt, and grime on the deck surface. This made it difficult for a passenger, such as Plaintiff, to see the deck was wet. There was no wet/caution floor sign present to alert Plaintiff to this.

100.   As a direct and proximate result of the aforementioned carelessness and negligence of the Defendant, CARNIVAL's employees, for which CARNIVAL is vicariously liable, the Plaintiff sustained an extremely serious injury, including a dislocated knee and damages to all the ligaments in her knee. This required multiple procedures to treat the injuries and involved a long, painful rehabilitation. Plaintiff suffered a serious injury to her body, pain and suffering, disability,

mental anguish, aggravation of preexisting conditions, inconvenience, scarring, the loss of the capacity for the enjoyment of life, loss of past earnings, loss of future earnings, diminished earning capacity in the future, her working ability has been impaired, has incurred medical expenses in the past and will incur medical expenses in the future. Plaintiff will require further medical care and treatment. These damages are permanent and continuing in nature.

**WHEREFORE**, the Plaintiff, demands judgment against the Defendant CARNIVAL for all damages recoverable under the law, as well as pre-judgment and post-judgment interest and costs to the extent allowed by law, and any, other relief deemed proper under the circumstances, and demands trial by jury of all issues so triable.

## COUNT III
## FAILURE TO WARN AGAINST CARNIVAL

101. The Plaintiff, realleges and adopts paragraphs one (1) through Seventy (70) above and further alleges:

102. At all times material hereto, Defendant had a duty to warn the Plaintiff of unsafe or dangerous conditions Defendant knew or should have known about.

103. Defendant knew the area where the incident occurred was the Lido deck, where the food and beverage places were located, and Defendant has admitted the Lido marketplace, and the Lido decks are where many or most of the slip/fall incidents happen. In addition, Defendant knew there was a leak in the immediate vicinity and knew there was a need for a caution/wet floor sign. Defendant knew passengers would be using the walkway where Plaintiff fell. Despite such, Defendant failed to warn Plaintiff of the unsafe and dangerous conditions.

104. Defendant knew that floor was unreasonably slippery and installed anti-skid strips on the deck for the crew, but not for the passengers.

105.    Notwithstanding Carnival's knowledge of the hazardous conditions that presented a risk of slip and fall incidents, Carnival breached the duty owed to the passengers to warn of such unsafe conditions. The failure to adequately warn of the unsafe condition in the area where Plaintiff fell was negligent.

106.    As of result of Defendant's negligent failure to warn, Plaintiff slipped and fell, and was severely injured, and her injuries are permanent in nature.

107.    As a direct and proximate result of the aforementioned carelessness and negligence of the Defendant, CARNIVAL, the Plaintiff sustained a serious injury. Plaintiff suffered a serious injury to her body, pain and suffering, disability, mental anguish, aggravation of preexisting conditions, inconvenience, scarring, the loss of the capacity for the enjoyment of life, loss of past earnings, loss of future earnings, diminished earning capacity in the future, her working ability has been impaired, has incurred medical expenses in the past and will incur medical expenses in the future. Plaintiff will require further medical care and treatment. These damages are permanent and continuing in nature.

**WHEREFORE**, the Plaintiff, demands judgment against the Defendant CARNIVAL for all damages recoverable under the law, as well as pre-judgment and post-judgment interest and costs to the extent allowed by law, and any, other relief deemed proper under the circumstances, and demands trial by jury of all issues so triable.

**Count IV**
**CARNIVAL VICARIOUSLY LIABLITY FOR EMPLOYEES FAILURE TO WARN**

108.    The Plaintiff, realleges and adopts paragraphs one (1) through seventy (70) above and further alleges:

109.    CARNIVAL's employees were assigned the task to regularly inspect and

monitor the area in question and to make sure adequate warnings were given to passengers, including proper placement of warning signs.

110. The employees assigned to these tasks had a duty to exercise reasonable care for the safety of the passengers, which included providing proper warnings to passengers of any unsafe condition, including an area that was wet and slippery.

111. The employees of CARNIVAL, the crewmembers assigned the tasks or duties to make sure the area in question was safe for passengers, and that there were proper and adequate warnings for the passengers, were negligent as there were no visible warnings posted of the unsafe nature of the area, and/or any warnings posted were not adequate to alert Plaintiff to the unsafe area where she slipped and fell.

112. CARNIVAL, by virtue of vicarious liability for the negligent act of its Crewmembers is liable for the negligence of the crew for failure to warn.

113. As a direct result of the negligent failure to warn, which CARNIVAL is liable for, Plaintiff slipped and fell and was severely injured.

114. As a direct and proximate result of the aforementioned carelessness and negligence of the Defendant, CARNIVAL, the Plaintiff sustained a serious injury. Plaintiff suffered a serious injury to her body, pain and suffering, disability, mental anguish, aggravation of preexisting conditions, inconvenience, scarring, the loss of the capacity for the enjoyment of life, loss of past earning, loss of future earnings, diminished earning capacity in the future, her working ability has been impaired, has incurred medical expenses in the past and will incur medical expenses in the future. Plaintiff will require further medical care and treatment. These damages are permanent and continuing in nature.

**WHEREFORE**, the Plaintiff, demands judgment against the Defendant CARNIVAL for all damages recoverable under the law, as well as pre-judgment and post-judgment interest and costs to the extent allowed by law, and any, other relief deemed proper under the circumstances, and demands trial by jury of all issues so triable.

<u>**COUNT V**</u>
<u>**NEGLIGENT SELECTION AND APPROVAL OF DECK SURFACE**</u>

115.    The Plaintiff, realleges and adopts paragraphs one (1) through Seventy (70) above and further alleges:

116.    At all times material hereto, Defendant was involved in the design and choice of the deck surfaces onboard the SUNSHINE and their entire fleet.

117.    The deck surface where Plaintiff fell is called an APL surface, which is the name of the manufacturer of the deck surface used on the Lido deck.

118.    The main material of the surface is plastic, which is known to become extremely slippery when wet.

119.     The manufacture of the APL surface, as well as the manufacture of a substantially similar deck surface that Defendant uses, called Bolidt surface, provides recommendations on how to properly maintain any slip resistant materials that are added to this plastic surface in order to provide a slip resistant walkway.

120.     Defendant, as shown in its own admissions, has learned for many years that many slip and fall accidents happen on these types of materials, placed on the Lido decks on board their ships.

121.     The Defendant has identified the Lido deck as the leading source of the slipped

30

and falls to the passengers, and slipped and fall accidents are the leading cause of injuries to the cruise ship passengers.

122.    Despite such, the Defendant selected, approved, and retained the deck surfaces for the Lido deck on their ships which were not reasonably safe for such areas due to the wear and tear that happens on board the ships in these heavily trafficked areas along with the failure to properly maintain the surface for slip resistance. The type of surface selected by Defendant and retained on their ships is not reasonably fit for its intended use as it provides insufficient slip resistance for walkway.

123.    Despite defending knowing that the surfaces would be used in areas by the pools, bars, restaurants, etc., and would get wet on a regular basis, including spillage of food and drinks of all type, defendant selected, approved, and retained this type of surface on the lido deck, including the area where the plaintiff fell.

124.    Defendant was negligent in selecting, approving, and retaining this type of surface for the lido deck and the area where plaintiff fell. It was unreasonably and dangerously slippery.

125.    As a result of Defendant's decision to install this type of deck surface, and keep this surface since its installation in 2013, Plaintiff needlessly encountered an unsafe and dangerous condition, an unreasonably slippery walkway. This caused her to slip and fall, and suffered serious, permanent, and debilitating injuries.

126.    Defendant knew of the unsafe nature and dangers of this type of surface and selected the surface and installed it and kept it despite such knowledge.

127.    As a direct and proximate result of the aforementioned carelessness and

negligence of the Defendant, CARNIVAL's employees, for which CARNIVAL is vicariously liable, the Plaintiff sustained an extremely serious injury, including a dislocated knee and damages to all the ligaments in her knee. This required multiple procedures to treat the injuries and involved a long, painful rehabilitation. Plaintiff suffered a serious injury to her body, pain and suffering, disability, mental anguish, aggravation of preexisting conditions, inconvenience, scarring, the loss of the capacity for the enjoyment of life, loss of past earnings, loss of future earnings, diminished earning capacity in the future, her working ability has been impaired, has incurred medical expenses in the past and will incur medical expenses in the future. Plaintiff will require further medical care and treatment. These damages are permanent and continuing in nature.

**WHEREFORE**, the Plaintiff, demands judgment against the Defendant CARNIVAL for all damages recoverable under the law, as well as pre-judgment and post-judgment interest and costs to the extent allowed by law, and any, other relief deemed proper under the circumstances, and demands trial by jury of all issues so triable.

**COUNT VI**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT**

128.    The Plaintiff, realleges and adopts paragraphs one (1) through Seventy (70) above and further alleges:

129.   On or about On or about June 20, at approximately 8:15 A.M, the Plaintiff suffered a slip and fall accident while aboard Defendant's cruise vessel. At the time of the incident, no caution or wet floor signs were present in the vicinity of the accident, contrary to the claims made by the Defendant post-incident. Following the incident, Defendant intentionally misled the United States Coast Guard by providing fabricated statements and photographs, claiming that caution/wet floor signs had been in place at the time of the accident.

130.   The Defendant's actions to place caution signs after the slip and fall and subsequently take photographs were calculated to create the false impression that the proper warnings were present and to shift the blame to the Plaintiff.

131.   Defendant's actions constitute outrageous conduct that is wholly intolerable in a civilized society. By lying to the Coast Guard and presenting false evidence, Defendant acted with the intent to cause, or with the reckless disregard of the likelihood of causing, emotional distress to the Plaintiff.

132.   As a direct and proximate result of Defendant's actions, Plaintiff has suffered severe emotional distress, including but not limited to anxiety, humiliation, and emotional pain, requiring treatment. The Plaintiff's emotional distress was a foreseeable consequence of the Defendant's outrageous acts, and the Defendant should be held legally responsible for its intentional infliction of emotional distress.

**WHEREFORE**, the Plaintiff, demands judgment against the Defendant CARNIVAL for all damages recoverable under the law, as well as pre-judgment and post-judgment interest and costs to the extent allowed by law, and any, other relief deemed proper under the circumstances, and demands trial by jury of all issues so triable.

Dated: October 2, 2024.

Respectfully submitted,

By: ___s/ Brett Rivkind_____

BRETT RIVKIND, ESQ.

FBN: 373486

seainjury@rivkindlaw.com

RIVKIND, MARGULIES & RIVKIND, P.A.

169 East Flagler Street

Suite 1422

Miami, FL 33131

Telephone: (305) 374-0565

Facsimile: (305) 539-8341

Attorneys for Plaintiff